IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANE CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   CIVIL ACTION NO. 1:18-CV-00167-JB-MU |
| O'CHARLEY'S, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 47) and

Defendant's Motion for Summary Judgment (Doc. 52).  Both Motions are fully briefed and ripe

for review.  After careful consideration, and with the benefit of oral argument, the Court **GRANTS**

Defendant's Motion for Summary Judgment (Doc. 52) and **DENIES** Plaintiff's Motion for Summary

Judgment.

I.     **FACTUAL BACKGROUND**

Plaintiff lived in Foley, Alabama from early 2013 until March 2017.  (Doc. 52-1 at 4, 6).

Plaintiff's son, Jim, and his family live in the Gulf Shores area.  (Doc. 48-1 at 6).  When Plaintiff

lived in Foley, she occasionally visited the O'Charley's restaurant at 3060 South McKenzie Street

with her family.  Plaintiff does not recall exactly how often she visited this O'Charley's, though

she contends she visited the restaurant "a couple of times every six months" while she lived in

Foley.  (*Id.*).

In   2016,   Plaintiff   was   diagnosed   with   chronic   inflammatory   demyelinating

polyneuropathy, which limits her mobility.  (Doc. 47 at 3).  Plaintiff suffered a stroke on April 16,

2016, further limiting her ambulatory abilities.  (Doc. 52-1 at 10).  From April 16, 2016 to approximately September 2016, Plaintiff did not visit the Defendant's restaurant .  (Doc. 56-1 at 41).  However, Plaintiff contends she attempted to go to the Foley O'Charley's "at least two or three times" between September 2016 and March 2017.  (Doc. 52-1 at 42).

Plaintiff moved from Foley to Tuscaloosa, Alabama in March of 2017.  (Doc. 52-1 at 6). After moving to Tuscaloosa in 2017, Plaintiff traveled to the Gulf Shores area approximately three to four times per year.  (Doc. 52-1 at 32).  Plaintiff contends she attempted to visit Defendant's restaurant two or three times after moving to Tuscaloosa.  (Doc. 52-1 at 38, 44).

Plaintiff moved to an "independent living facility" in Gardendale, Alabama in April 2019. (Doc. 52-1 at 50 – 51).  Plaintiff has not returned to Foley since February 2019.  (Doc. 52-1 at 53 – 54).  When asked if she had plans to return to the Defendant's restaurant, Plaintiff said she, "hoped to get down there during the holidays," and that she could only go "if Michael [her son] and Heather [her daughter-in-law] were going to go visit[.]  [T]hey would probably drive me and then visit for a couple of days and come back."  (Doc. 52-1 at 54).  When asked whether Plaintiff had discussed those plans with her son, she stated that no, she had not, "not in detail."  (*Id.*). Similarly, Plaintiff did not know whether "[she would] be going [to Foley] or if they'll be coming up here for the holidays," but she was "sure she would go" to Foley eventually, although she "[didn't] have the exact dates."  (Doc. 52-1 at 58).

Because of her condition, Plaintiff usually depends on a motorized wheelchair to get around.  (Doc. 52-1 at 7). Though she can stand, she cannot do so independently.  (Doc. 52-1 at 8 – 9). Plaintiff also cannot drive long distances.  (Doc. 52-1 at 18).  On long-distance trips, Plaintiff rarely stays away from her home over four or five days; staying longer causes cause her

discomfort.  (Doc. 52-1 at 36).  Visits to family in Gulf Shores require planning and coordination.

These plans require members of her family to either also be traveling to Gulf Shores or to "driv[e]

[her] halfway" and other members of her family "meet [her halfway]."  (Doc. 52-1 at 18).  The

record before the Court reveals no definite plans for a visit to Defendant's restaurant.

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure states, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears 'the

stringent burden of establishing the absence of a genuine issue of material fact.'"  *Kennedy v.*

*Warrior Air, Inc*., 2019 U.S. Dist. LEXIS 208109, *3 (S.D. Fla. Dec. 2, 2019) (citing *Sauve v. Lamberti*,

597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  To prevent summary judgment, a factual dispute must be

both material and genuine.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505,

2510, 91 L. Ed. 2d 202 (1986).  "A 'material' fact is one that 'might affect the outcome of the suit

under the governing law.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016)

(quoting *Anderson*, *supra*).  "To raise a 'genuine' dispute, the nonmoving party must point to

enough evidence that 'a reasonable jury could return a verdict for [him].'" *Shaw v. City of Selma*,

884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Furcron, supra*).

"The standard of review for cross-motions for summary judgment does not differ from

the standard applied when only one party files a motion, but simply requires a determination of

whether either of the parties deserves judgment as a matter of law on the facts that are not

disputed." *Ness v. Aetna Life Ins. Co.,* 257 F. Supp. 3d 1280, 1287 (citing *Am. Bankers Ins. Group*

*v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)).  "The Court must consider each motion on its merits, resolving all reasonable inferences against the party whose motion is under consideration."  *Id.*  "The Eleventh Circuit has explained that '[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *Ness,* 257 F. Supp. 3d at 1287 (citing *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## III.    DISCUSSION

### A.    Plaintiff's Claims

Plaintiff filed this action on April 9, 2018, alleging violations of Title III of the Americans with Disabilities Act ("ADA").  Plaintiff alleges Defendant's premises are out-of-compliance with Title III of the ADA for the following reasons: (1) the van accessible parking space does not comply with the ADA; (2) the top of the bar surface exceeds the maximum alleged height of 34 inches above the finished floor; (3) there are items in the maneuvering clearance at the toilet room door; (4) the rear wall grab bar fails to be located 12 inches on the closed side of the toilet room and 24 inches on the transfer side; (5) the centerline of the water closet fails to be 16 inches minimum to 18 inches maximum from the side wall or partition).  (Doc. 47 at 8).  Plaintiff seeks only prospective injunctive relief requiring Defendant to remedy the alleged ADA non-compliant conditions at its restaurant.

### B.    The Parties' Competing Dispositive Motions

Both parties have filed Motions for Summary Judgment.  In her Motion for Summary Judgment, Plaintiff contends she is due judgment as a matter of law because her testimony

demonstrates she suffered harm due to O'Charley's architectural barriers and her expert witness's report substantiates these claims.  (Doc. 47 at 7 – 9, 15).  In its motion, Defendant contends Plaintiff lacks standing under Article III of the United States Constitution because she cannot establish a real and immediate threat of future injury.  (Doc. 54 at 2).

     **C.**    **Standing Analysis**

"As standing is a jurisdictional issue, the Court must first address whether Plaintiff has standing to bring her claims."  *Kennedy v. Warrior Air, Inc.*, 2019 U.S. Dist. LEXIS 208109 at *4 (S.D. Fla. Dec. 2, 2019) (citing *Hallandale Prof'l Fire Fighters Local 2238 v. Hallandale,* 922 F.2d 756, 759 (11th Cir. 1991)).  To satisfy Article III's standing requirement under the Constitution, Plaintiff must show the following: "(1) injury-in-fact, (2) 'a causal connection between the asserted injury-in-fact and the challenged action of' Defendants, and (3) 'that the injury will be redressed by a favorable decision.'"  *Kennedy v. Beachside Commer. Propos., LLC,* 732 Fed. Appx. 817, 820 (11th Cir. 2018) (quoting *Houston v. Marod Supermarkets, Inc.,* 733 F.3d 1323, 1328 (11th Cir. 2013).  Moreover, in order to merit injunctive relief under Title III of the ADA, Plaintiff must show that she faces imminent future injury.  *See id.* ("[a] Plaintiff must do more than show that she was injured in the past; rather, she must also demonstrate a sufficient likelihood that she will be affected by the allegedly unlawful conduct in the future.") (internal brackets, citations, and quotations omitted); *Houston,* 733 F.3d at 1328 ("a plaintiff seeking injunctive relief 'must show a sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future  [which requires a showing of] 'a real and immediate – as opposed to a merely conjectural or hypothetical – threat of <u>future</u> injury.")  (underline in original, internal citations omitted); *see also Kennedy v. Cape Siesta Motel, LLC,* 2018 U.S. Dist. LEXIS 171725, * 5 (M.D. Fla. Oct. 4, 2018)

(same); *Longhini v. Gateway Retail Ctr., LLC,* 2018 U.S. Dist. LEXIS 14619, * 4 – 5 (M.D. Fla. Jan. 30, 2018) ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent.") (quoting *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006)).

When assessing whether a plaintiff faces a real and immediate threat of future injury in an action brought under Title III of the ADA, courts employ a four-factor "proximity test" which "focuse[s] on the frequency of the Plaintiff's visits to the defendant's business and the definitiveness of the plaintiff's plan to return." *Beachside,* 732 Fed. Appx. at 820 (citing *Silva v. Baptist Health S. Fla., Inc.,* 856 F. 3d 824, 832 (11th Cir. 2017) (citing *Houston,* 733 F.3d at 1337 n. 6). Those factors include: "(1) the definitiveness of plaintiff's plan to return; (2) plaintiff's past patronage of defendant's business; (3) the proximity of the place of public accommodation to plaintiff's residence; and (4) the plaintiff's frequency of travel near defendant." *Warrior Air,* 2019 U.S. Dist. LEXIS 208109 at *6 – 7 (quoting *Kennedy v. Floridian Hotel, Inc.*, 2018 U.S. Dist. LEXIS 207984, at *10 (S.D. Fla. Dec. 7, 2018)). No single factor is determinative, nor is the list exhaustive. *See Beachside* 732 Fed. Appx. 817 at 821. Rather, "[d]istrict courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Id.* (quoting *Houston,* 733 F.3d at 1337 n.6).

### 1.    Definiteness of Plaintiff's Plan to Return.

The first factor of this test cuts against a finding that Plaintiff has standing to bring this action. Plaintiff **hoped** she could return to Foley to visit family sometime during the 2019 holiday season and believes she will return to Defendant's restaurant **at some point**. However, the undisputed facts show Plaintiff had no formalized plans or arrangements for a return trip to Defendant's restaurant in Foley. (Doc. 52-1 at 54, 58). The possibility of a future visit to

Defendant's restaurant is the very essence of a mere aspirational plan.  Without some concrete plan to return to Foley in the future, her "plan to return" is not sufficient to establish standing. *Compare Beachside,* 732 Fed. Appx. at 821 ("Plaintiff's generalized intent to return to the Cocoa Beach area sometime in the future does not bolster her case.") with *Houston,* 733 F.3d at 1335 (stating allegations of concrete plans to return in the near future are sufficient to satisfy standing on a motion to dismiss); *see also Warrior Air,* 2019 U.S. Dist. LEXIS 208109 at *6 ("Simply demonstrating an intent to return to the place responsible for the initial injury is not sufficient."); *Rosenkrantz v. Markopoulos,* 254 F.Supp. 2d 1250, 1252 (2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563–64, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)) for the principle that a plaintiff must indicate "a date certain that they would return" in order to establish standing).

### 2.    Plaintiff's Past Patronage of Defendant's Business.

Plaintiff's allegations of her past patronage benefit her on the question of standing. Defendant contends Plaintiff's allegations concerning any past patronage – particularly with respect to visits in 2018 – are too vague to take into account.  The Court disagrees. *See e.g., Hill v. Lazarou Enters.*, 2011 U.S. Dist. LEXIS 37849, *42 (S.D. Fla. Mar. 17, 2011) ("Despite the defendant's protestations to the contrary, the plaintiff's sworn deposition testimony is evidence sufficient to create a genuine issue of material fact.").  Plaintiff contends that when she lived in Foley, she visited the O'Charley's at least twice every six months.  This means Plaintiff claims to have visited the Foley O'Charley's approximately sixteen (16) times before moving to Tuscaloosa in March 2017.  (Doc. 48-1 at 6).  Further, Plaintiff contends she twice attempted to visit the Foley O'Charley's after moving to Tuscaloosa, resulting eighteen (18) total trips.  (Doc. 52-1 at 38, 44). Though these visits are undocumented, this past patronage tends to support Plaintiff's standing

to bring this action.  *See Kennedy,* 732 Fed. Appx. at 821 ("[A] plaintiff seeking injunctive relief under Title III must have attempted to return or at the minimum intend to do so in the future.") (quotation marks omitted);  *Houston,* 773 F.3d at 1336 ("While past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy, the plaintiff's exposure to illegal conduct in the past is nonetheless evidence bearing on whether there is a real and immediate threat of repeated injury . . . a plaintiff seeking an injunction must have attempted to return to the non-compliant building or at least intend to do so in the future.") (internal citations and parentheses omitted).

### 3.     Proximity of the Place of Accommodation to Plaintiff's Residence.

It is undisputed that Plaintiff now lives two-hundred and seventy-eight (278) miles away from the Foley O'Charley's.  (Doc. 77).  Precedent in this Circuit holds that such a distance is generally too great to support a finding of standing.  *See Beachside,* 732 Fed. Appx. at 822 (finding a 175-mile distance too great to establish standing: "Plaintiff lives about three hours away from the area and has no definitive plans to return . . ."); *Cape Siesta,* 2018 US Dist. LEXIS *171725 at * 8* ("And although Plaintiff's secondary Debary residence is closer to the Property than her Tamarac home, a seventy-nine-mile distance is substantial and cuts against a finding that Plaintiff has standing."); *Longhini,* 2018 US Dist. LEXIS 14619 at *6 (finding no standing where the plaintiff lived over 350 miles away from the establishment).  This undisputed evidence of the distance separating Plaintiff's residence from Defendant's restaurant weighs against a finding that Plaintiff has standing to bring this action.

**4.      Plaintiff's Frequency of Travel Near Defendant.**

As to the fourth element of the proximity test - the frequency of Plaintiff's travel near Defendant – this, too, cuts against a finding of standing.  As noted in her deposition testimony, Plaintiff traveled to the Foley O'Charley's twice after her move to Tuscaloosa in 2018.  (Doc. 52-1 at 38, 44).  However, she has not returned to Foley since February 2019.  Plaintiff does not travel long distances independently and has no concrete plan to do so in the future.  (*Id.* at 58).  As Plaintiff's travel near Defendant's restaurant has been infrequent and limited, this factor weights against a finding that Plaintiff has standing.

Considering the undisputed evidence in the light most favorable to Plaintiff, the Court finds no imminent threat of future injury and that Plaintiff does not have standing to bring this action.  Reflecting on the totality of circumstances, the Court acknowledges Plaintiff has a legitimate reason to return to the Foley area – to visit her son and his family.  The undisputed facts, however, show Plaintiff now lives a significant distance from Foley, she has no concretized plan to return, and that she has not returned to Foley since February 2019.  Moreover, the undisputed evidence that Plaintiff is unable to drive long distances alone, that she relies on family to make these trips, and that her family is willing to visit her in Gardendale, persuades the Court that Plaintiff cannot make such a trip spontaneously on her own.  The totality of these circumstances demonstrate Plaintiff does not have standing to bring this action.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion is hereby **GRANTED**.  Plaintiff's

Motion is **DENIED**.

**DONE and ORDERED** this 15th day of April, 2020.

/s/ JEFFREY U. BEAVERSTOCK

UNITED STATES DISTRICT JUDGE